IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
MAR - 8 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

L. SUZANNE BROWN,  )
    Plaintiff,  )
          )
      v.  )  Case No. 1:13-cv-174
          )
UNITED STATES OF AMERICA,  )
    Defendant.  )
          )
          )

**MEMORANDUM OPINION**

In this removed defamation action against a Federal Bureau of Investigation ("FBI") employee, the Government, invoking the Westfall Act,[1] has been substituted as the party defendant on the ground that the acts complained of were within the scope of the individual defendant's FBI employment. As the substituted defendant, the Government now seeks dismissal of this action on the ground that the Federal Tort Claims Act ("FTCA")[2] does not waive immunity for the acts alleged in the complaint. Plaintiff disputes the Government's scope of employment determination, arguing that the acts complained of were outside the scope of employment and that the original individual defendant should be reinstated and the action remanded to state court.

For the reasons that follow, and because the acts complained of were within the scope of employment under Virginia law, the Government's scope of employment certification is correct, and the complaint must therefore be dismissed.

---

[1] 28 U.S.C. § 2679.

[2] 28 U.S.C. § 2671 et seq.

1

## I.

The facts in this case are relatively straightforward.[3] Plaintiff, L. Suzanne Brown, is a Special Agent with the FBI, who was formerly assigned to the FBI's Critical Incident Response Group (CIRG). She alleges that one of her former colleagues, Kate Schoeneman, a psychologist formerly employed under a one-year contract at CIRG, defamed plaintiff by falsely reporting to FBI officials that plaintiff had sexually harassed her. Specifically, plaintiff alleges that Schoeneman reported to FBI officials that plaintiff "had made unwelcome or unwanted sexual advances" towards Schoeneman in the workplace, including engaging in "sexually-oriented and aggressive behavior" that "increased in frequency and intensity." According to plaintiff, Schoeneman told FBI officials that plaintiff repeatedly told her sexual stories and raised sexual topics with her in the workplace. Schoeneman also alleged that after she informed FBI officials about plaintiff's inappropriate behavior, plaintiff engaged in retaliatory conduct that made Schoeneman feel unsafe.

The FBI investigated Schoeneman's allegations and, as a result, initiated disciplinary action against plaintiff. Plaintiff states in her complaint that as a result of Schoeneman's allegedly false reports, plaintiff (i) was demoted from a GS-14 Supervisory Special Agent to a GS-13 Special Agent, (ii) had her salary reduced commensurate with that demotion, (iii) was suspended for ten days without pay, (iv) was involuntarily placed on a temporary duty assignment to the Investigative and Operations Support Section in Manassas, Virginia from October 2010 through November 2011, and (v) was involuntarily transferred for "loss of effectiveness" to New York. Nonetheless, plaintiff asserts that Schoeneman's allegations are

---

[3] The facts recited here are derived from the complaint and the parties' submissions.

2

untrue and therefore defamatory. Further, plaintiff contends that Schoeneman made the reports to FBI officials maliciously and based on her own personal motivations.

Plaintiff originally filed the instant complaint on February 3, 2011 in the Circuit Court of Stafford County, Virginia, alleging defamation under Virginia common law. The complaint was served on Schoeneman on February 22, 2011, and on October 24, 2011 the United States Attorney for the Eastern District of Virginia certified that Schoeneman was acting within the scope of her employment at the time that she reported the alleged harassment. On February 7, 2013, the action was removed[4] in accordance with the Westfall Act, 28 U.S.C. § 2679(d)(2). *L. Suzanne Brown v. United States of America*, 1:13cv174 (E.D. Va. Feb. 7, 2013) (Notice of Removal). Also in accordance with the Westfall Act, 28 U.S.C. § 2679(d)(1), the action was deemed an action brought against the United States, and the United States was substituted for Schoeneman as the defendant. *L. Suzanne Brown v. United States of America*, 1:13cv174 (E.D. Va. Feb. 14, 2013) (Notice by the United States of Substitution).[5]

---

[4] In January of 2013, prior to removal, plaintiff sought leave to file an amended complaint, which the Stafford County Circuit Court had not addressed at the time of the removal. The proposed amended complaint alleges three counts: defamation, defamation per se, and intentional infliction of emotional distress. The original complaint alleged only defamation and defamation per se. The emotional distress complained of is derived from Schoeneman's allegedly defamatory behavior, and the causes of action are thus linked. Although the motion to amend the complaint has not been granted at this time, amending the complaint would not alter the analysis or the result reached here. The FTCA addresses not only the enumerated intentional torts discussed below, but also "[a]ny claim arising out of" those torts. 28 U.S.C. § 2680(h). Here, the intentional infliction of emotional distress claim clearly arises out of the alleged defamation.

[5] The Westfall Act provides that upon certification by the Attorney General or his designate that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, the action is (i) "deemed an action against the United States"; (ii) "the United States shall be substituted as the party defendant"; and (iii) the claim "shall be removed without bond at any time before trial by the Attorney General." 28 U.S.C. §

3

The parties do not dispute that if the Government's certification is correct, and thus the Government is properly substituted as the defendant in this case, dismissal is mandated pursuant to the FTCA.[6] Plaintiff, however, objects to the scope of employment certification and the substitution of the Government on the ground that Schoeneman's allegedly false reporting of sexual harassment to FBI officials was not an activity that fell within the scope of Schoeneman's employment. Therefore, the question presented is whether Schoeneman acted within the scope of her employment when she complained about plaintiff's alleged harassment. If so, the scope of employment certification is proper, and the case must be dismissed.

## II.

Where, as here, a plaintiff objects to the Government's scope of employment certification under the Westfall Act, a district court must review the certification to determine whether, under the governing state law, the employee was acting within the scope of his or her employment at the time of the alleged wrongful acts or incidents. The Government's scope of employment certification is conclusive unless challenged, and when a certification is challenged, the

---

2679(d)(1)-(2). In the instant case, just over two years elapsed between the original filing of the case in state court and its removal to federal court. It appears from correspondence submitted by the Government that this delay occurred in large part because plaintiff was considering whether to pursue her case in light of the Government's certification and substitution. *See* Letter from Dennis C. Barghaan, Assistant United States Attorney, to Kimberly Jandrain, Counsel to Suzanne Brown (October 4, 2011) (filed as Exhibit B to Document 9 in the instant action). Because the Westfall Act explicitly provides that claims subject to a certification "*shall be* removed without bond at *any time* before trial," the delay in removing this case has no impact on the analysis or the result reached here.

[6] The FTCA states that its general waiver of sovereign immunity for tort claims does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights..." 28 U.S.C. § 2680(h). Therefore, if the Government is properly substituted as defendant in this defamation claim, the case must be dismissed because of the Government's sovereign immunity.

certification serves as prima facie evidence that the employee's alleged wrongful acts were within the scope of his or her employment. *See Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153-54 (4th Cir. 1997). The burden then shifts to the plaintiff to prove by a preponderance of the evidence that the employee was not, in fact, acting within the scope of his or her employment. *Id.* Importantly, the plaintiff, in contesting the Government's certification, must provide "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Id.* at 1155.

Whether the Government's scope of employment certification is correct is never a jury question; rather, it is a question of law for the court to decide. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995); *Gutierrez de Martinez*, 111 F.3d at 1152. In this regard, the Fourth Circuit has noted that

> [t]he Westfall Act, in conjunction with the FTCA, makes clear that a plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the relevant state law would provide a jury trial.

*Gutierrez de Martinez*, 111 F.3d at 1153. Additionally, the Fourth Circuit has made clear that discovery on the scope of employment issue is only appropriate if there is a material dispute of fact. *Id.* at 1155. Such a limitation on discovery is appropriate because "immunity under the Westfall Act, like other forms of absolute and qualified immunity, 'is an *immunity from suit* rather than a mere defense to liability.'" *Gutierrez de Martinez*, 111 F.3d at 1154 (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Given these principles, the first step in the analysis is to determine whether plaintiff has borne her burden of demonstrating by a preponderance of the evidence that Schoeneman was not acting within the scope of her employment at the time she reported plaintiff's alleged sexual

5

harassment. Plainly, plaintiff has not carried this burden. To the contrary, there is no doubt that under Virginia law,[7] Schoeneman's report to FBI officials of plaintiff's alleged sexual harassment was well within the scope of Schoeneman's employment. Of course, sexual harassment is illegal, and accordingly, the FBI has a policy that states "[h]arassment simply will not be tolerated," and "[i]mmediate and corrective action will be taken to address any form of harassment." Memorandum from Robert S. Mueller, III, Director of the FBI, to all FBI employees regarding the FBI's Policy on Harassment (February 14, 2005) (filed as Exhibit D to Document 9 in the instant case). The FBI's Policy on Harassment "strongly encourage[s]" employees to report sexual harassment, *Id.*, for as both parties acknowledge, sexual harassment is a significant impediment to the operation of a fair, safe, and effective workplace. Thus, preventing and correcting workplace sexual harassment is very much within the "ordinary course of [the FBI's] business," *Gina Chin & Assoc., Inc. v. First Union Bank*, 260 Va. 533, 543 (2000) (quoting *Davis v. Merrill*, 133 Va. 69, 78 (1922)). It follows that when, as here, an FBI employee, consistent with the FBI's Policy on Harassment, reports an incident of sexual harassment, the employee is acting within the scope of her employment. In sum, the facts and circumstances of this case point convincingly to the conclusion that Schoeneman was acting within the scope of her FBI employment when she complained to FBI officials about alleged workplace sexual harassment. Also pertinent to the scope of employment calculus is that the allegedly false reports of harassment were made at the FBI's facilities while Schoeneman was on duty. *See Gulf Underwriters Ins. Co. v. KSI Services, Inc.*, 416 F. Supp. 2d 417, 420-21 (E.D.

---

[7] All of the allegedly defamatory reports were made at the FBI's facility in Stafford County, Virginia. Virginia's *respondeat superior* law therefore governs whether Schoeneman was acting within the scope of her employment at the time that she reported the alleged harassment to FBI officials. *See Jamison v. Wiley*, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

6

Va. 2006) *aff'd*, 233 F. App'x 239 (4th Cir. 2007) (holding that whether the tortious act was committed during the time the employee was on duty and whether the tortious act was committed while the employee was on the employer's premises were both factors weighing in favor of finding the activity within the scope of employment).

Given that reporting workplace sexual harassment is so clearly a part of an employee's duties, it is perhaps not surprising that neither party has found or cited a Virginia case directly on point. There is, however, one federal district court decision that squarely addresses the question presented here and reaches the same result. In *Grantham v. Durant*, the district court for the District of Nevada upheld the Attorney General's certifications, stating that

> Reporting sexual harassment in the workplace is not an independent venture of the employee and is committed in the course of the very task assigned to the employee. It is in an employer's interest that its employees report sexual harassment and cooperate with investigations of sexual harassment to maintain a professional business environment and to avoid potential civil liability.

*Grantham v. Durant*, 471 F. Supp. 2d 1069, 1075 (D. Nev. 2006).[8]

Seeking to avoid the result reached here, plaintiff claims that although a legitimate report of sexual harassment would fall within the scope of employment, Schoeneman's conduct falls outside that scope (i) because Schoeneman committed an intentional tort when she reported the

---

[8] Although not directly on point, *Shirvinski v. United States Coast Guard*, 1:09cv896 (E.D. Va.), is analogous and persuasive. In that case, plaintiff Shirvinski claimed that he was defamed when members of the Coast Guard reported to various Coast Guard officials that he acted improperly, created tensions with multiple Coast Guard employees and officers, and "caused tumult" during meetings. Shirvinski also alleged that the United States had been improperly substituted for the individual Coast Guard employees because those employees were acting outside the scope of their employment when they reported his improper behavior. The court overruled plaintiff's objection to the Notice by The United States of America of Substitution, granted the Coast Guard's motion to dismiss insofar as plaintiff sought monetary damages against defendants, and dismissed the claims against the individual defendants with prejudice. *Shirvinski v. United States Coast Guard*, 1:09cv896 (E.D. Va. Dec. 18, 2009) (Order).

alleged harassment and (ii) because her reports were "motivated entirely by her own interests, her own feelings about Brown, and her own reckless disregard for the truth." Both claims fail. The fact that the alleged act may be an intentional tort does not remove the act from the scope of employment. As the Supreme Court of Virginia has stated,

> [t]he courts ... have long since departed from the rule of non-liability of an employer for wilful [sic] or malicious acts of his employee. Under the modern view, the wilfulness [sic] or wrongful motive which moves an employee to commit an act which causes injury to a third person does not of itself excuse the employer's liability therefor.

*Commercial Bus. Sys., Inc. v. Bellsouth Services, Inc.*, 249 Va. 39, 45 (1995) (quoting *Tri-State Coach Corp. v. Walsh*, 188 Va. 229, 305-06 (1948)). In fact, the Supreme Court of Virginia has on several occasions held that intentional torts are within the scope of employment provided the service in which the tortious act was done was within the ordinary course of business.[9] It is also worth noting that excluding intentional torts from the scope of employment determination would undermine the Government's sovereign immunity. As the Fourth Circuit has noted,

> to separate the activity that constitutes the wrong from its surrounding context...would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available.

---

[9] *See, e.g., Plummer v. Center Psychiatrists*, 252 Va. 233 (1996) (a psychologist was not, as a matter of law, acting outside the scope of his employment when he allegedly sexually assaulted a patient during therapy sessions); *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*, 249 Va. 39 (1995) (it was a jury issue whether an employee was acting outside the scope of his employment when he awarded contracts in exchange for bribes); *Tri- State Coach Corp. v. Walsh*, 188 Va. 299 (1948) (the lower court was correct in submitting to the jury the question whether the employer should be held liable when an employee, while driving the employer's truck, assaulted another driver after an argument concerning the employee's driving); *Gina Chin*, 260 Va. 533 (2000), (a bank teller's participation in a scheme to deposit forged checks into the personal account of his co-conspirator was not, as a matter of law, outside the scope of employment).

*Johnson v. Carter*, 983 F.2d 1316, 1323 (4th Cir. 1993) (overturned on other grounds).

Nor is an act outside the scope of employment simply because an employee acts in his own personal interest, rather than in the interests of the employer. In this respect, plaintiff relies on *Kensington Associates v. West*, 234 Va. 430 (1987), for the contention that because Schoeneman was motivated solely by her own interests, her conduct falls outside the scope of employment. Plaintiff's reliance on *Kensington* is misplaced, as the Supreme Court of Virginia has since explicitly and consistently rejected that line of reasoning, holding instead that the employee's motive in performing the allegedly tortious acts does not determine whether the action falls within the scope of employment. *Gina Chin*, 260 Va. at 543. As that court put it, "[r]ather, the issue is 'whether the service itself, in which the tortious act was done, was within the ordinary course of such business.'" *Id.* at 543 (quoting *Davis v. Merrill*, 133 Va. 69, 78 (1922)). Consistent with this principle, the Supreme Court of Virginia has found that a variety of intentional torts were within the scope of employment, despite the fact that the tortious acts in those cases were clearly undertaken because of the employee's personal motivations, rather than in the interests of or on behalf of the employer.[10]

In light of the result reached here, plaintiff's claim for discovery must be denied. Plaintiff has neither presented nor forecasted any facts or evidence that would alter the result reached here. In order to protect the Government's sovereign immunity, discovery may only be granted where there is a dispute of a material fact, and in this case there is none. *Gutierrez de Martinez*, 111 F.3d at 1155. As such, there is absolutely no basis for discovery.

---

[10] *See supra* footnote 9. Although an employee's motivation can be a factor in some circumstances, it is not a significant one in the instant circumstances.

Finally, the Government argues that the action should be dismissed because the FTCA limits the actions that may be brought against the United States to those where an administrative claim has already been presented to, and denied by, the relevant agency in writing. 28 U.S.C. § 2675(a). Plaintiff has not presented a claim to the FBI. Plaintiff's failure to comply with this requirement is another, independent reason to dismiss the suit.

Accordingly, defendant's motion to dismiss for lack of jurisdiction must be granted. An appropriate order will issue.

Alexandria, Virginia
March 8, 2013

/s/
T. S. Ellis, III
United States District Judge